**IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.    2:21-cv-00310-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | |
| | : | |
| Defendant. | : | |

**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Defendant, Lisa Barbounis hereby moves the Court to grant Defendant's Motion to

Dismiss Plaintiff's Complaint pursuant to Rules of 9(b) and 12(b)(6) of the Federal Rules of

Civil Procedure and relies upon the accompanying Memorandum of Law in support of

Defendant's Motion.  A Proposed Order granting Defendant's Motion to Dismiss is filed along

with Defendant's Motion.

**RESPECTFULLY SUBMITTED**

**By:**    /s/ Seth D. Carson
Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Email: Seth@DerekSmithLaw.com

DATED: June 28, 2021

**IN THE UNITED STATES DISTRICT COURT**
**FOR EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| THE MIDDLE EAST FORUM | : | CIVIL ACTION |
| | : | NO.    2:19-cv-05697-JS |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| LISA REYNOLDS-BARBOUNIS | : | MOTION FOR SANCTIONS |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT,**
**<u>LISA REYNOLDS-BARBOUNIS' MOTION FOR RULE 11 SANCTIONS</u>**

### I.    INTRODUCTION AND ARGUMENT

Plaintiff and its counsel have filed the instant lawsuit (Document 1) against Lisa Barbounis for improper purposes as Middle East Forum's RICO lawsuit lacks both legal and factual support.  Plaintiff's RICO lawsuit is deficient at every level and Plaintiff is unable to establish any of the required elements to substantiate this retaliatory abusive lawsuit.   By way of example, a valid RICO claim requires the plaintiff to allege a pattern of racketeering activity, which must include at least two predicate acts that are related to each other (i.e., "horizontal" relatedness) and also related to the RICO enterprise as a whole (i.e., "vertical" relatedness).  The two predicate acts alleged by Middle East Forum are Daniel Thomas' possible misappropriation of a small percentage of a grant in the beginning of 2018, and Lisa Barbounis' so-called theft of trade secrets two years later after her employment with MEF ended.  In presenting its false and misleading pleading, Plaintiff files a complaint that is directly contradicted by the undisputed evidence and findings of fact issued by Judge Wolson and Judge Sanchez in the counterclaims and hearing for injunctive relief, respectably.  In-so-doing, Plaintiff's complaint improperly

rewrites the past.  There is no justification for Plaintiff's or its counsel's conduct but to say that Plaintiff and its counsel are untroubled by laws or facts and will do nothing to continue the unlawful campaign of retaliation against Lisa Barbounis.

RICO lawsuits are required to plead specific predicate acts which must be related to one-another. See RJR Nabisco, Inc. v. Eur. Cmty., 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) ("A predicate offense implicates the Racketeer Influenced and Corrupt Organizations Act (RICO) when it is part of a "pattern of racketeering activity," meaning a series of related predicates that together demonstrate the existence or threat of continued criminal activity."). Id.  The two so-called, "predicate acts" presented by Plaintiff are entirely unrelated and have no reasonable relationship.  One of the acts was undertaken by another individual: Daniel Thomas.  The other is the trade secrets violations of which this Court has extensive knowledge.  Through the hearing for injunctive relief it was apparent that there are only four discrete acts, or emails that Lisa Barbounis sent that could form the basis for MEF's Trade Secrets case.  In denying the request for injunctive relief this Court ruled that there is no likelihood Lisa Barbounis's conduct will be repeated in the future.

Middle East Forum seems to be untroubled by the fact that Lisa Barbounis had nothing to do with the so-called misappropriation of granted money by Daniel Thomas.  Lisa Barbounis' lack of involvement in the granted money is an undisputed fact.  MEF acknowledges that its case is not about Lisa Barbounis' involvement in misappropriating granted money.  To the contrary, MEF's concern is that Lisa Barbounis discussed the possibly misappropriation about one year later with Daniel Thomas' significant other, Jazmin Bishop, and did not inform MEF about the conversation.  This is not the making for a RICO lawsuit and it certainly is not a predicate act.

Judge Wolson responded to Plaintiff's and Defendant's dispositive motions on these very

issues.  Judge Wolson also responded to the issue of relatedness in ruling on MEF's Motion to Amend its Answer.  Judge Wolson concluded that the trade secrets allegations and ***the possible*** misappropriation of granted money by Daniel Thomas could be litigated in two separate courtrooms because they lack factual continuity and were unrelated (2:19-cv-05030-JDW Document 52). ("There is very little, if any, legal or factual overlap between the claims in the MEF Case and the counterclaims MEF seeks to assert here based on this alleged conduct") Id. These events are certainly not sufficiently related as to meet the strict RICO requirement for relatedness of predicate acts.

In addition, a plaintiff must allege that the pattern of racketeering activity had "continuity." Plaintiff's deficient lawsuit pleads that the continuity requirement is "open-ended," in that it carries the threat of future repetition.  This Court's ruling in the Trade Secrets case collaterally estops Middle East Forum from making this argument See (Case 2:19-cv-05697-JS Document 91).

> Barbounis left Middle East Forum on August 9, 2019. Since approximately August 19, 2019, she has worked as the Director of Communications for United States Representative Randy Weber of Texas. Barbounis has stated she has no present intention of disclosing any of Middle East Forum's information still in her possession. The record supports that assertion. Middle East Forum has presented no evidence suggesting Barbounis intends to make any further disclosures of any of its information. … Middle East Forum has not shown an immediate risk of irreparable harm. This is not a case where a company is attempting to enforce a noncompete covenant against a former employee.  Barbounis is the Director of Communications for a U.S. Congressman, and Middle East Forum has presented no evidence that its confidential information would be relevant to Barbounis's current employment. Further, Middle East Forum has presented no evidence that Barbounis is currently using, attempting to use, or even considering using any of its confidential information for any purpose. Id.

Defendants cannot even claim to meet the continuity requirement because every predicate act and so-called "scheme" identified by Plaintiff's deficient RICO lawsuit is a discrete act.  Certainly if Daniel Thomas did misappropriate money granted to him in June 2018, which ***Plaintiff cannot***

*substantiate*, it is a discrete act with no continuity.  Moreover, this Court found that the Trade Secrets violations are confined to four emails sent in 2019, which are also discrete acts with no evidence the conduct will be repeated in the future.  Regarding the issue of continuity, Plaintiff's complaint presents only generalized allegations that the conduct is likely to be repeated in the future. The Complaint lacks all specificity and presents no factual averments to substantiate the allegation that Lisa Barbounis' conduct will be repeated in the future.  Defendants lawsuit certainly lacks the specificity requirements promulgated through the Iqbal, Twombly cases.

Plaintiff sandwiches in a third predicate act stating that Lisa Barbounis abandoned her job duties and continued a sexual relationship.  Simply put, these are not predicate acts.  It might be the legal understatement of the century to state that congress never intended the civil RICO statute to include acts by a woman in her private time to pursue a sexual relationship.  Plaintiff's attempt to crowbar Lisa Barbounis' sexual relationship into the instant lawsuit (Document 1) and recast it as a predicate act under the civil RICO statute evidences the justification for Lisa Barbounis' Rule 11 Motion for Sanctions.

Plaintiff's deficient RICO lawsuit also fails the strict pleading requirements under Rule 9. Plaintiffs, such as Middle East Forum, who raise claims involving allegations of fraud must satisfy the stringent pleading burden set forth in Fed. R. Civ. P. 9(b), which demands that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  It is not enough to cite to an email and generally label it "wire fraud." This requirement governs civil RICO complaints alleging predicate acts of mail fraud, wire fraud and bank fraud. In order to satisfy the particularity standard set forth in Rule 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent."  Allegations of fraud which fail to conform to this standard must be dismissed.

Moreover, Courts in the Third Circuit have frequently noted that alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney's fees in federal court simply because they are cast in terms of RICO violations.  While a Second Circuit case, the Court in <u>Schmidt v. Fleet Bank</u>, clarified the rationale for this strict standard applied to RICO pleadings.  See <u>Schmidt v. Fleet Bank</u> 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("[Civil RICO] is an unusually potent weapon—the litigation equivalent of a thermonuclear device . . . courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.").

The Middle East Forum's  RICO claims are legally and factually deficient and filed for improper purpose.  MEF has not sufficiently pled any of the predicate acts, the predicate acts pled do not constitute a pattern of racketeering activity within the meaning of the statute, and MEF does not have standing to sue Lisa Barbounis under the civil RICO statute.  Moreover, the fraud allegations lodged are not pled sufficiently to meet the particularity requirement of Rule 9(b); the uses of the wires were not done "in furtherance" of the alleged scheme; the intent element is not adequately pled; MEF has failed to identify acts by Lisa Barbounis that constitute predicate acts; MEF does not have standing to bring RICO claims, the RICO allegations in the complaint form neither an open-ended nor a closed-ended continuity, and therefore do not constitute a "pattern of racketeering activities" within the meaning of the statute.

Plaintiff, Middle East Forum's RICO lawsuit is also deficient as MEF has failed to establish any of the predicate acts and is collaterally estopped from relitigating issues that were already

decided.  Judge Wolson's Order to dismiss with prejudice all of the counterclaims for lack of evidentiary support confirms that Middle East Forum cannot even prove the underlying predicate acts.  The hearing for equitable relief in the Trade Secrets Case confirms there is no evidence that Lisa Barbounis' conduct is likely to be repeated in the future.  Accordingly, Middle East Forum's RICO lawsuit fails at every level and must be dismissed as a matter of law.

## II.    LEGAL STANDARD

Defendant moves to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.  A plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Twombly, 550 U.S. at 555.  Conclusory allegations are "not entitled to be assumed true." Iqbal, 556 U.S. at 681 (citing Twombly, 550 U.S. at 554-55).  Moreover, the factual allegations in a plaintiff's complaint must be enough to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Thus, allegations based upon a plaintiff's "information and belief" are insufficient because they are based on mere speculation. See, e.g., Advanced Oral Techs., LLC v. Nutrex Research, Inc., No. 10-5303, 2011 WL 1080204, at *4 n. 6 (D.N.J. Mar. 21, 2011) ("Allegations made upon information and belief—which are little more than conjecture and wishful thinking—have little hope of salvaging an otherwise defective complaint."). The Third Circuit uses a three-step process for determining the sufficiency of a complaint.  First, this Court should "'tak[e] note of the elements a plaintiff must plead to state a claim.'" Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675).  Second, this Court "should identify those allegations that 'because they are no more than conclusions, are not

entitled to the assumption of truth.'" <u>Id</u>. (quoting Iqbal, 556 U.S. at 679).  Third, "'w[hen] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" <u>Id</u>

### III.    ARGUMENT

The Middle East Forum has no evidence to substantiate the predicate acts upon which its RICO lawsuit is based.  The predicate acts identified in Plaintiff's deficient lawsuit (Document 1) do not constitute a pattern of related schemes, but are unrelated discrete acts.  Moreover, the Middle East Forum has no evidence to substantiate these claims, and cannot argue that they need discovery to uncover the evidence.  This is because Middle East Forum has already received, through the Trade Secrets Case and the Counterclaims, all discovery from Lisa Barbounis that could possibly be related to the RICO lawsuit.  There is nothing left for Lisa Barbounis to turn over to MEF.   Lisa Barbounis believes she has already produced to MEF, through discovery in three other federal court cases, filed in the Eastern District of Pennsylvania, every single text thread and electronic communication, in its entirety, that she sent or received from every email account, social media account, and device that she used and was available, during her employment with MEF.  She has also produced all of the information from her cloud storage accounts like Dropbox, iCloud, Facebook, Twitter, and other accounts of this nature.  In fact there are almost no accounts that Lisa Barbounis used during her employment with MEF that were not subject to discovery in at least one of the three cases already in litigation.  This electronic discovery of all Lisa Barbounis' accounts is what MEF calls "the Post-Resignation Investigation."   <u>See</u> (<u>Document 1</u>).  After receiving this information, MEF drafted and filed a complaint for an improper purpose, (<u>Id</u>.) that is directly contradicted by the available and undisputed evidence.

The predicate acts upon which the Middle East Forum seeks to base its RICO allegations

have already been litigated, and Judge Wolson dismissed each and every one of them.   The same factual averments upon which the RICO claims are based were alleged in MEF's counterclaim complaint which included counts for: (1) breach of the duty of loyalty, (2) fraudulent misrepresentation, and (3) civil conspiracy.   In dismissing every one of these counterclaims, Judge Wolson ruled,

> The counterclaims in this case have all the trappings of a bingeworthy (or cringeworthy) primetime soap opera: infidelity; recorded phone calls; British slang; possibly stolen money; political ambitions; jealousy; international travel; casual drug use; and a cast of colorful characters. But drama does not a federal case make. Spoiler alert: the Middle East Forum has not offered evidence to make out its claims against Lisa Barbounis, and she is entitled to summary judgment on each one.  Case 2:19-cv-05030-JDW Document 135.

Due to Judge Wolson's Order and Opinion, Middle East Forum is collaterally estopped from relitigating the same issues that have already been decided based upon the undisputed record of fact.  "[U]nder the doctrine of collateral estoppel, … the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).  In dismissing the Counterclaims, Judge Wolson's issued a ruling that was based on the undisputed facts and addressed almost every averment brought by Middle East Forum in the deficient RICO lawsuit.   In comparing the deficient RICO lawsuit to Judge Wolson's Order and Opinion, it is clear that MEF would like to avoid the actual evidence and relitigate issues that have already been litigated and ruled upon.   MEF is collaterally estopped from litigating these same issues again.

MEF's complaint is replete with paragraphs that have no evidentiary support and are contradicted by the available evidence.   See Document 1 Paragraph 15, which states that "Lisa Barbounis encouraged MEF to grant money to Daniel Thomas."   There is no evidence to support

this assertion.  The evidence and undisputed facts demonstrates that Lisa Barbounis had little to do with the granted money.  Lisa Barbounis did not advocate for the grant.  She was not involved in sending the money.  Daniel Thomas worked directly with Greg Roman and Marnie O'Brien in all aspects of the negotiating, accounting for, and receiving the granted money.  Document 1 Paragraph 19 states that "Lisa Barbounis was at all times aware of terms and provisions of the Grant Agreement and that Daniel Thomas was not entitled to take any of the money for himself or to use for his own benefit."  This Paragraph is also contradicted by the undisputed evidence available to MEF.  After extensive discovery, it is clear that Lisa Barbounis was not directly involved in the electronic communications between MEF and Daniel Thomas with regard to the Grant Agreement.  These communications were sent and received strictly between Daniel Thomas, Greg Roman, and Marnie Meyer.  Moreover, Daniel Thomas worked directly with Greg Roman with regard to how Daniel Thomas was spending and accounting for the granted money.  Lisa Barbounis was not directly involved or part of these conversations.  Paragraph 19 of Plaintiff's deficient lawsuit is contradicted by the emails between Daniel Thomas and Greg Roman where Daniel Thomas notifies Greg Roman that Daniel Thomas intended to keep some of the money for himself because of the extensive time and effort that Daniel Thomas spent working on and organizing the rally.  This evidence was produced by Middle East Forum to Lisa Barbounis.  Accordingly, MEF's willingness to plead in direct contradiction with these undisputed facts is troubling to say the least and implicated Rule 11 sanctions.  This evidence is addressed by Judge Wolson's Order and Opinion and Plaintiff, Middle East Forum's deficient lawsuit contradicts it all.  See Case 2:19-cv-05030-JDW Document 135 Filed 06/08/21 Page 2 of 20:

> "On June 4, 2018, five days before the rally was scheduled to take place, Mr. Thomas emailed MEF's Director, Gregg Roman, a breakdown of the various costs to fund the rally.  In that email, Mr. Thomas indicated that production expenses (i.e. a PA system, stage, video screens, crowd barriers, etc.) would cost a total of £17,700.

However, the accompanying invoice from the vendor indicated that those expenses would only cost £15,198.  Mr. Thomas told MEF that the whole event would cost £22,450. …  The following Monday, Mr. Thomas emailed Mr. Roman and confirmed that he received £23,454 in his bank account for the rally and provided Mr. Roman with another breakdown of all the associated costs.  As part of that breakdown, Mr. Thomas advised MEF that he was charging £130 for a hotel room from the night before the event, and he also charged £120 to cover his travel expenses to and from London.  In addition, Mr. Thomas explained that he was invoicing MEF £1,204 for having to liaise with various individuals as part of his efforts organizing and managing the event.  In the breakdown of costs, Mr. Thomas characterized this line item as "[m]yself for the management of the event." (ECF No. 111-3 at Ex. 74.) … On June 22, 2018, a few weeks after the event, a representative from Breitbart London forwarded another budget to Mr. Roman and Ms. Barbounis for a second event for Tommy Robinson in July.  Ms. Barbounis then told Mr. Roman that she had "a bad taste in [her] mouth from the last event." (Id. at Ex. 73.)  She explained that Mr. Thomas "applied for the grant but hasn't supplied, to my standard, a proper account of the money disbursements" and expressed concern that she had "2 'vendors' asking for money . . .." (Id.)  MEF took no action based on Ms. Barbounis's concern.

Id. Document 135

Plaintiff, Middle East Forum's complaint is contradicted by the same evidence that MEF obtained *or produced* during the so called, ""Post Resignation Investigation."  Judge Wolson's Order and Opinion addresses whether Lisa Barbounis committed a wrongful act under the law when Lisa Barbounis returned from the trip to London and almost immediately sent an email to Greg Roman making Roman aware of Daniel Thomas's possible misappropriation of the granted money.   Lisa Barbounis' email to Greg Roman sent June 22, 2018, specifically suggested that MEF never give money to Tommy Robinson through Daniel Thomas again because of the way Daniel Thomas accounted for the granted money.  MEF disregarded Lisa Barbounis entirely and is suing Lisa Barbounis multiple times today, pretending like Lisa's warning never happened.

Judge Wolson ruled there was no evidence to indicate that Lisa Barbounis was complicit in any misappropriation of funds or that Lisa Barbounis breached a duty of loyalty when she reported what Lisa Barbounis perceived to be a possible misappropriation once on June 22, 2018.

Moreover Judge Wolson ruled that it was MEF's lack of diligence and not Lisa Barbounis's actions

or failure to act that was the real factor in bringing about any alleged injuries the Middle East

Forum may have suffered as a result of Daniel Thomas' decision to keep a small percentage

(possibly 5%) of the granted money for himself and charge it for the work Daniel Thomas

performed.  Judge Wolson wrote:

> "Second, in the weeks following the Tommy Robinson event, Ms. Barbounis told
> Mr. Roman that she had  "a bad taste in [her] mouth from the last event[,]" because
> Mr. Thomas had not yet supplied a proper accounting of the disbursement of funds
> and two vendors were asking to be paid. (ECF No. 111-3 at Ex. 73.) As a result,
> Ms. Barbounis recommended that any grant money for future events should be paid
> to someone other than Mr. Thomas to ensure the proper disbursement and
> accounting for the funds. Again, MEF took no further action, despite Ms.
> Barbounis's statement to Mr. Roman: "[l]et me know how you wish to proceed."
> (Id.)  Having raised a concern about Mr. Thomas's accounting once, Ms. Barbounis
> had no obligation to raise the same issue again and again going forward.  Id.
> Document 135.

Middle East Forum's entire civil action complaint (Document 1) is contradicted by the available

and undisputed facts and evidence that was exchanged between the parties over the past two years.

There is no evidence that Lisa Barbounis committed wire fraud.  When the allegations that are

contradicted by the record of undisputed evidence are omitted, Plaintiff's deficient complaint is

reduced to only generalized false assertions.  For example, Paragraph 23 of Plaintiff's Complaint,

states:

> "At the time of the Robinson Rally or shortly thereafter, Barbounis became aware
> of the fact that of the $32,000 that MEF had paid to Thomas pursuant to the Grant
> Agreement, Thomas had stolen or misappropriated a substantial portion of the
> money for his own personal use and benefit unrelated to the Robinson Rally
> ("Thomas' Theft")." (Document 1).

Every word of this paragraph is false and contradicted by the available and undisputed evidence.

To begin, there is no evidence that Daniel Thomas misappropriated any money much less a

"substantial portion."   Again, Judge Wolson's Order and Opinion summarizes the available

evidence.

> In fact, the Court questions whether Mr. Thomas's statements regarding his retention of 5% of MEF's grant money qualify as statements against his interest. When Mr. Thomas provided Mr. Roman with a breakdown of the final expenses two days after the Tommy Robinson rally took place, he made plain that he was charging MEF £250 for hotel and travel expenses and an additional £1,204 for coordinating and managing the event. Thus, of the total £23,454 he received from MEF to run the event, Mr. Thomas kept £1,454—roughly 6%—for himself and told MEF he was doing so. MEF did nothing about it. Mr. Thomas's consistent statement to Mr. Roman, over two years later, that he kept 5% for himself was not so contrary to his pecuniary interest and did not have so great a tendency to expose him to liability as to render it a statement against his interest. <u>Case 2:19-cv-05030-JDW Document 135 Filed 06/08/21 Page 10 of 20</u>.

Moreover, the only evidence presented by MEF that indicates Lisa Barbounis suspected that Daniel Thomas did not properly account for granted money were text communications between Lisa Barbounis and Jazmin Bishop sent in March 2020, about a year after the money was granted.

Document 1, Paragraph 24, states:

> In breach of her trust , fiduciary, and loyalty obligations to MEF, Barbounis willfully failed to disclose to MEF her knowledge of Thomas' Theft from June 2018 until she resigned from on August 7, 2019; and Barbounis willfully concealed Thomas' Theft from MEF during that period, while assuring Thomas that she would not tell MEF about it and conspiring with Thomas to keep it a secret from MEF (the "Conspiracy"). <u>Document 1</u>.

This paragraph is contradicted by the undisputed evidence available to both Plaintiff and Defendant.  MEF has direct evidence that contradicts Paragraph 24, because Lisa Barbounis immediately notified MEF,  on June 22, 2019, that she did not trust Daniel Thomas and specifically identified Daniel Thomas money management as the reason for her distrust.  <u>Case 2:19-cv-05030-JDW Document 135 Filed 06/08/21 Page 14 of 20</u>.

Document 1, Paragraph 20 of Plaintiff's deficient lawsuit presents more false and misleading information.  MEF, through counsel, writes:

> In an e-mail she sent to her supervisor, Roman, on June 3, 2018, Barbounis asked Roman for permission to travel to London with an MEF co-worker, Patricia McNulty ("McNulty"), "to attend the [Robinson] rally and help out;" and Roman

granted Barbounis and McNulty permission to make the trip for that purpose only.
Document 1.

Again, Middle East Forum is in possession of information that confirms this allegation is

false and misleading. Lisa Barbounis traveled to London on her own dime in June 2019. She paid

for her own plane ticket, hotel, food, lodging, travel expenses and all incidentals. Lisa Barbounis

went on a private trip to London on her personal time. Because Lisa Barbounis agreed to stop by

the rally and report back to MEF during her personal travels, MEF agreed to contribute about

$200.00 toward the trip. This amounted to about half the cost of Lisa Barbounis' airline ticket.

Paragraph 26 of Plaintiff's Complaint would be comical if it were not so serious and part

of an unlawful pattern of extortion in violation of the Civil RICO Statute. MEF actually writes

that Lisa Barbounis traveled while she held a position with MEF, as if a woman's travels while

employed by Middle East Forum was in and of itself an unlawful act. Does Defendant even have

to address the absurdity of this paragraph?

Document 1, Paragraph 27 of Plaintiff's complaint mischaracterizes an email Lisa

Barbounis sent to Daniel Pipes, and presents it in a false and misleading light. Judge Wolson's

Order and Opinion addresses this email along with the other issues Middle East Forum and its

counsel attempts to rely upon in filing its deficient RICO lawsuit. See Document 135

> ("MEF bases its claim on three categories of alleged misrepresentations: 1) Ms.
> Barbounis's statement that MEF funds meant to support Tommy Robinson were
> actually used for that purpose (and not misappropriated by Mr. Thomas for his
> personal use); 2) Ms. Barbounis's statement that her seven trips to the United Kingdom
> between June of 2018 and July of 2019 were for legitimate MEF purposes as opposed
> to personal reasons; and 3) Ms. Barbounis's statements that she was working with
> Tommy Robinson on his free speech issues only, rather than attempting to fundraise
> for non-MEF purposes and/or for personal gain. MEF has failed to establish liability
> based on any of these alleged misrepresentations. … The gist of the action doctrine
> likely bars the claims. But the Court need not decide that question because MEF does
> not have facts to support any of its fraudulent misrepresentation claims. … The record
> does not contain any evidence that Ms. Barbounis concealed Mr. Thomas's alleged
> misappropriation of funds from MEF or remained silent once she suspected something

was not right. Instead, the record demonstrates that Ms. Barbounis raised her suspicions shortly after the first Tommy Robinson event and recommended that MEF not distribute additional funds to Mr. Thomas or any other group assisting Tommy Robinson. … In fact, Mr. Thomas himself sent MEF an accounting and told MEF how he was using the money. Case 2:19-cv-05030-JDW Document 135 Filed 06/08/21 Page 16 of 20.

Judge Wolson's Opinion and Order continues to address Lisa Barbounis' travels to Europe on her own time and on her own dime.

*Second*, MEF cannot maintain its misrepresentation claim based on Ms. Barbounis's statements about her travels. According to Mr. Pipes, if he had known that Ms. Barbounis was going to the United Kingdom to engage in political activity with Mr. Robinson, he would have terminated her employment with MEF. However, the undisputed evidence demonstrates that Mr. Pipes knew about Ms. Barbounis's involvement with Tommy Robinson's political efforts, and he did not terminate her employment once he became of aware of it. Indeed, on at least one occasion, Ms. Barbounis told Mr. Pipes and Mr. Roman that she attended multiple Tommy Robinson rallies and volunteered her time on his campaign. (*See* ECF No. 111-4 at Ex. 121; ECF No. 111-5 at Ex. 130.). … Mr. Pipes did not terminate her employment when she made these disclosures. And, prior to Ms. Barbounis's trip to London in July 2019, Mr. Pipes knew that she planned to do work for Mr. Robinson while she was there, yet he still did not terminate her. Instead, he said: "So, go if you wish but know I will be very upset with major consequences if your presence becomes known outside Tommy Robinson's own circles." (ECF No. 111-5 at Ex. 132.) MEF cannot now contend that Ms. Barbounis's political work in July 2019 or earlier was material or even that she concealed it from MEF. In fact, Mr. Pipes's failure to terminate Ms. Barbounis after learning of her political work for Mr. Robinson demonstrates that that knowledge was not material to MEF at any point. … There is no evidence that Ms. Barbounis concealed or omitted her involvement with those fundraising pitches with the intent of misleading MEF into relying on it. Nor is there evidence that MEF awarded any grants based on Ms. Barbounis's actions. Nor is there evidence to suggest that MEF would have terminated Ms. Barbounis if it had known about her involvement in those efforts. The only evidence suggesting that MEF would have terminated Ms. Barbounis for any transgression is Mr. Pipes's declaration, and even that document does not suggest that this particular conduct would have led to her termination. (See ECF No. 111-1 at Ex. 1, ¶¶ 68-82.). Case 2:19-cv-05030-JDW Document 135 Filed 06/08/21 Pages 17 and 18 of 20.

It is a fact that Plaintiff's entire complaint is contradicted by the undisputed evidence in these cases. Accordingly, MEF cannot make out a single claim against Lisa Barbounis much less satisfy the strict legal requirements to substantiate a civil RICO case.

Even if Middle East Forum was permitted to plead facts that indicated Lisa Barbounis learned that some other individual misappropriated money granted by Middle East Forum, and did not notify her supervisors about the misappropriation, that is not a predicate act under the Civil RICO statute.  Breach of duty of loyalty is a civil tort.  Lisa Barbounis' decision to keep silent about information she was not certain about does not rise to the level of a predicate act.  The only evidence that this occurred were text communications sent and received in March 2020, almost a year after Lisa Barbounis returned from London and emails the warning to MEF, Director, Greg Roman, never to provide money to Tommy Robinson through Daniel Thomas again.  This is the first predicate act that MEF attempts to rely upon in sustaining its RICO lawsuit.   The Third Circuit holding in <u>Kehr Packages</u> is instructive.  ("In order to establish pattern of racketeering activity within meaning of Racketeer Influenced and Corrupt Organizations Act, plaintiff must show that racketeering acts were related and that they amounted to or posed threat of continued criminal activity.").  <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406 (3d Cir. 1991).  Because MEF never granted money to Daniel Thomas again, there are no facts in MEF's complaint that even suggest a threat of continued criminal activity with respect to this so-called predicate act. Short term scheme threatening no future criminal activities is not sufficient to show pattern of racketeering activity within meaning of RICO. <u>Id</u>.  The same analysis applies to the other predicate acts pled by MEF in its deficient RICO lawsuit.

MEF pled that there is a threat of continued Trade Secrets violations, however the parties have been involved in the Trade Secrets litigation for almost two years to date.  The Middle East Forum requested injunctive relied from this very Court.  In presenting its argument for injunctive relief, MEF presented four emails, all sent in 2019, as evidence.  If evidence of a continued threat existed, certainly MEF would have presented it to substantiate the civil RICO requirement of

continuity.  Judge Sanchez's holding in denying the motion for injunctive relief concluded that MEF's Trade Secrets case is limited to the four emails sent in 2019 and whether MEF actually suffered damages due to these four emails.  Notwithstanding, these four emails are discrete acts and do not satisfy the continuity requirement.

MEF's final attempt to justify use of the civil RICO statute is perhaps the most troubling example of a legal and factual disconnect this counsel has ever come across.  Middle East Forum pleads that the salary that Lisa Barbounis earned during her employment with MEF, should not have been paid to Lisa Barbounis and that it constitutes a predicate act.  MEF attempts to crowbar into this argument an allegation that Lisa Barbounis maintained a sexual relationship with Daniel Thomas.  This is possibly a twisted revisioning of the after acquired evidence doctrine, which holds that a plaintiff's past wage claim can be mitigated by information indicating the plaintiff would have been terminated for cause.  Only here, Plaintiff, Middle East Forum is suggesting that Lisa Barbounis owes her wages back to Middle East Forum because she should not have been getting paid for the work that Lisa Barbounis performed.  MEF and its counsel makes this argument while in possession of evidence that confirms that Lisa Barbounis was receiving a job bonus during this same time period for a "job well done."  See Middle East Forum's Statement of Undisputed Facts (Case 2:19-cv-05030-JDW Document 109-3 Filed 03/01/21 Page 21 of 50) ("In March 2019, the Forum paid a second round of discretionary performance bonuses to several in-office employees, including Plaintiff, [Lisa Barbounis], who received $6,000. Exhibit 59, Second Bonus to Plaintiff.  These bonuses were for "a job well done" and increased work responsibilities, and had nothing to do with any allegations against Roman. Exhibit 1, Certification of Daniel Pipes, at ¶ 63.).  Accordingly, MEF is presenting fact statements supported by a Declaration and exhibits confirming that Lisa Barbounis' job performance was at a level that warranted a bonus for a "job

well done;" while simultaneously presenting a complaint that suggests that Lisa Barbounis very acceptance of her paycheck should be construed as a predicate acts sufficient to warrant use of the civil RICO statute.  Defendant suggests that these facts indicate Middle East Forum's lack of standing to even rely upon the civil RICO statute.  Lisa Barbounis never received a penny from any other source during her employment with Middle East Forum.  Every dollar that Lisa Barbounis received during her employment with MEF came in the form of a w2 paycheck from MEF, and was taxed accordingly.  These facts preclude use of the civil RICO statute.

Defendant next contends that MEF's RICO claims must be dismissed because there is not a sufficient nexus between the injuries allegedly suffered MEF and the asserted predicate acts to create standing for MEF to bring suit under 18 U.S.C. § 1964.  First, the alleged predicate acts of wire fraud were not the proximate cause of any of MEF's injuries if they occurred.  Second, Defendant suggests that Middle East Forum can be the corrupt organization, or the enterprise, and the Plaintiff.  To state a civil RICO claim, it is not sufficient to allege that a group of individuals or businesses committed predicate acts of racketeering. Switzer v. Coan, 261 F.3d 985, 992 (10th Cir.2001). The plaintiff must also identify the criminal enterprise, a separate entity, on whose behalf the individuals acted. Dirt Hogs Inc. v. Natural Gas Pipeline Co. of America, 2000 WL 368411 (10th Cir.2000). The purpose of this requirement is to satisfy Congressional intent in enacting RICO; RICO was not intended to simply create another form of conspiracy, but was aimed at preventing criminal organizations from taking over legitimate businesses or engaging in a pattern of racketeering acts. Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc., 108 F. Supp. 2d 84, 92-93 (D.Conn.1999).  The "enterprise" element regarding continuity requires that the claimed enterprise have sufficient indicia of continuity to warrant treatment under the RICO statute. See Calcasieu, 943 F.2d at 1462; Reynolds v. Condon, 908 F.

Supp. 1494, 1512-13 (N.D.Iowa 1995).  For these reasons, Plaintiff's complaint fails to state an actionable RICO claim.  Plaintiff has failed to plead any ongoing criminal enterprise.  Plaintiff, Middle East Forum's complaint alleges that the criminal enterprise is Middle East Forum.  See Document 1 Page 4 of 38.  Plaintiff's complaint presents only generalized allegations that Lisa Barbounis' conduct "poses a real threat that the conduct will be repeated in the future" Document 1.  Plaintiff's complaint parrots this future threat allegation but fails to present any allegation that actually support an argument for continuity.  If the enterprise was Middle East Forum, there can be no argument that the conduct will be repeated in the future.  Lisa Barbounis' employment with MEF ended in August 2020.  Since August 2020, Lisa Barbounis has worked exclusively for a United States Congressman on Capital Hill.  Lisa Barbounis has had no connection with MEF for going on one year.

As many cases have pointed out, RICO was intended to address the threat of continuing, long-term racketeering activity.  See, e.g., Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir.1989); Sutherland v. O'Malley, 882 F.2d 1196, 1205 (7th Cir.1989). The conspiracy and fraud alleged in Plaintiff's complaint simply do not present any threat of continuing racketeering activity.  See Hibbard v. Benjamin, 1992 WL 300838 (D.Mass.1992). ("Therefore, the mere fact that the alleged fraud occurred over a four-year period is not sufficient to state an actionable pattern of racketeering activity.").  See, e.g., In re: Burzynski, 989 F.2d 733, 742-43 (5th Cir.1993) ("no sufficient pattern of racketeering conduct where all alleged predicate acts took place as part of underlying lawsuit, which had ended; conduct did not constitute or threaten long-term criminal activity, even though lawsuit lasted for six years").  For this reason also, Plaintiff's complaint fails to state a viable RICO claim.

**IV.     CONCLUSION**

A civil RICO claim is "an unusually potent weapon the litigation equivalent of a thermonuclear device." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y.1996).  For this reason, there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous.  To deter such conduct, courts have not hesitated to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims. See id., 167 F.R.D. at 660.  A sanction under Rule 11 is appropriate where a RICO claim is filed even though no reasonable and competent attorney would believe the claim has merit. Barrett v. Tallon, 30 F.3d 1296, 1301-02 (10th Cir.1994).  Defendant, Lisa Barbounis has provided Plaintiff, Middle East Forum with a Rule 11 Motion and Letter.  Defendant suggests that Plaintiff's RICO lawsuit is woefully deficient and fails at every level to meet the strict requirements to sustain a RICO claim.  Accordingly, Defendant requests that Plaintiff's Complaint be dismissed with prejudice and Plaintiff sanctions for filing an improper pleading.

**DEREK SMITH LAW GROUP, PLLC**

By:     /s/ Seth D. Carson
     Seth D. Carson, Esquire
     1835 Market Street, Suite 2950
     Philadelphia, Pennsylvania 19103
     Phone: 215.391.4790
     Email: seth@dereksmithlaw.com

DATED: June 28, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 28, 2021, a true and correct copy of the foregoing Motion to Dismiss was filed and served electronically through the Court's CM/ECF system.

Sidney L. Gold sgold@discrimlaw.
Sidney L. Gold & Associates P.C.
1835 Market Street, Suite 515
Philadelphia, PA  19103
Tel: (215) 569-1999
Fax: (215) 569-3870
Counsel for  The Middle East Forum

Robert A. Davitch, Esq.
1101 Market Street, Suite 2700
Philadelphia, PA 19107
(215) 574-0600 – Office
(215) 574-0310 – Fax
rad@sidkoffpincusgreen.com

**DEREK SMITH LAW GROUP, PLLC**

By:  _____/s/ Seth D. Carson_____
Seth D. Carson, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: 215.391.4790
Email: seth@dereksmithlaw.com

DATED:  June 28, 2021